**Effie GUTHRIE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (THE TRAVELERS' CLUB, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 4, 2004.

Decided July 21, 2004.

Ronald D. Ashby, Media, for petitioner.

Patricia S. Duffy, Exton, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge McGINLEY.

Effie Guthrie (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) denial of Claimant's fatal claim petition filed as a result of the death of her husband, James H. Guthrie (Decedent).

On October 24, 2000, Decedent suffered a fatal heart attack while in Taiwan on a business trip with Peter Yu, President of the Traveler's Club (the Company). The Company was incorporated in California but maintained a sales staff throughout the United States. Decedent was involved with the Company for eight years prior to his death. Decedent sold the Company's luggage and small travel accessories to large retailers.[1] Decedent's sales territory was denoted as the northeastern United States. Decedent had accompanied Mr. Yu several times previously to Taiwan, where the Company's factories are located, to assist with design changes. On this trip, Mr. Yu paid Decedent's airfare to Taiwan and Decedent paid his own hotel expenses.

The issue presented is whether the Board and the WCJ correctly concluded the Company was not Decedent's employer.

Claimant testified at her deposition on January 30, 2002 that Decedent was a W–2 employee with the Company until approximately 1998. Deposition of Effie Guthrie (Deposition of Guthrie), January 30, 2002, at 27; Reproduced Record (R.R.) at 23a. Claimant indicated that after Decedent ceased being a W–2 employee he continued as vice president/national sales/marketing and performed the same duties. Deposition of Guthrie at 28; R.R. at 29a. According to Claimant, the change was in form only. Deposition of Guthrie at 28; R.R. at 29a. She conceded a modification in his position occurred. Deposition of Guthrie at 28; R.R. at 29a. Decedent remained in daily contact with the Company through phone, email, and faxes. Deposition of Guthrie at 29; R.R. at 30a. Claimant testified that Decedent kept all communications sent and received in a blue binder in his office. Deposition at 30;

1. In addition, he designed products for the Company but never received compensation.

R.R. at 1a. The blue binder, identified by Claimant at her deposition contained those communications produced in the course of Decedent's business activities. Deposition of Guthrie at 30; R.R. at 31a.[2]

Claimant also testified that Decedent sold products of other companies but denied that he continued to do so after his job status changed. Deposition of Guthrie at 44; Supplemental Reproduced Record (S.R.R.) at 18b. She also denied that Decedent sold for other companies at the time of his death. Deposition of Guthrie at 44; S.R.R. at 18b. Decedent submitted expenses for reimbursement to the Company for business trips after the change from W–2 status. Deposition of Guthrie at 43; S.R.R. at 17b. Claimant testified that Decedent did not have a company credit card and operated from a home office. Deposition of Guthrie at 43; S.R.R. at 17b.

At the deposition, Claimant produced Decedent's personal tax returns for 1999 and 2000.[3] Defense counsel submitted 3 exhibits: (1) Guthrie Exhibit D–1, consisting of two documents: a fax from Decedent to Christine Kim dated May 30, 2000, and a copy of a letter printed on the Company's letterhead; (2) Guthrie Exhibit D–2, containing 2 faxes from Decedent to Mr. Yu dated June 18, 1999, and June 24, 1999; and (3) Guthrie Exhibit D–3, a packet of five faxes (dated August 9, 1999, August 18, 1999, August 20, 1999, November 9, 1999, and December 3, 1999, respectively) from Decedent to Mr. Yu. All documents were reproduced directly from Decedent's blue binder.

The WCJ denied and dismissed Claimant's petition. The WCJ found Claimant did not carry her burden to show an employer/employee relationship between the Company and Decedent on the date of his death. Specifically, the WCJ found:

5. Decedent was not an employee of Traveler's [the Company's] at the time of his death. In this regard, particularly persuasive evidence is Decedent's fax to Traveler's [the Company's] dated May 30, 2000, wherein he acknowledged that he was an independent sales representative and not a direct employee of Traveler's [the Company's]; Christine Kim, Defendant's Controller, confirmed the relationship by letter dated May 31, 2000 ... Further, Decedent's tax returns established that Decedent was self-employed as a manufacturer's representative. Moreover, Petitioner [Claimant] conceded that there was a change in status between Decedent and Traveler's, and that Decedent was no longer a W–2 employee. Finally, the various faxes presented by both parties document a change in the relationship prior to the time of Decedent's death.

6. The testimony of the Petitioner [Claimant] is found credible and persuasive in part; specifically, as it relates to her status as a widow, and the

---

**2.** Claimant submitted Exhibit C–10, a packet of faxes between Mr. Yu and Decedent pulled from the blue binder. It included four faxes from February 22, 2000, and one from February 29, 2000, all containing general business dealings between the parties. After reviewing these documents, this Court agrees with the WCJ and the Board that the documents failed to establish that Decedent was an employee of the Company.

**3.** Defense counsel submitted these returns at the deposition. Decedent also filed corporate tax returns for those years. Claimant and Decedent owned an S–Corporation called the Traveler's Den headquartered in West Chester where they resided. Deposition of Guthrie at 37; R.R. at 36a. Traveler's Den sold products of other manufacturers, if their products did not compete with the Company's products. Deposition of Guthrie at 37–38. Claimant ran the store full time. Deposition of Guthrie at 38. The Company was aware of this arrangement and had no objection. Deposition of Guthrie at 37–38; R.R. at 36a.

status of her children. As relevant to this Decision, however, on the issue of the employment relationship, the record, including in measure Petitioner's [Claimant's] own testimony, negates an employee/employer relationship. On this determinative threshold issue, the defense of the Defendant [the Company] is accepted, and to the extent evidence was presented as would alter the determination make [sic] in this Decision, it is not found credible.

WCJ Decision (Decision), October 29, 2002, Findings of Fact Nos. 5–6 at 2; R.R. at 16. Claimant appealed to the Board which affirmed.

■ Claimant contends several errors were committed by the WCJ: first, exhibits submitted by the Company during Claimant's deposition were not properly authenticated; second, the sustained hearsay objections to portions of Claimant's deposition testimony were in error; third, the WCJ erroneously failed to conclude the Decedent was an officer and employee of the Company by operation of law and fact.[4]

■ Claimant contends that the two faxes dated May 30, 2000, and May 31, 2000 (Guthrie Exhibit D–1) submitted by the Company during Claimant's deposition were hearsay because they were not properly authenticated as business records.[5] Whether a document should be submitted under the business records exception to the hearsay rule is within the discretion of the trier of fact provided that his or her discretion is exercised within the dictates of the Uniform Business Records as Evidence Act.[6] *Toth v. Workers' Compensation Appeal Board (USX Corp.)*, 737 A.2d 838 (Pa.Cmwlth.1999). This type of evidentiary ruling may only be reversed on appeal if an error of law was committed or there was a clear abuse of discretion. *Toth*, 737 A.2d at 841. A document not prepared by the person testifying is not automatically rendered inadmissible as long as the authenticating witness provides sufficient information relating to the preparation and maintenance of the record to justify a presumption of reliability. *Id.*

During Claimant's deposition, *she* identified the challenged documents and stated the blue binder contained all the communications between her husband and the Company during the course of their business.[7]

---

4. Our review in workers' compensation cases is limited to determining whether violations of constitutional rights or errors of law were committed, or whether necessary findings of fact are adequately supported by substantial, competent evidence. *Universal Am–Can v. Workers' Compensation Appeal Board (Minteer)*, 563 Pa. 480, 762 A.2d 328 (2000).

5. Hearsay is an out-of-court statement which is offered to prove the truth of the matter asserted, and if properly objected to, will not support a finding of fact. *Crouse v. Workers' Compensation Appeal Board (PLCB)*, 165 Pa. Cmwlth.233, 645 A.2d 310 (1994).

6. 42 Pa.C.S. § 6108. The relevant portion of the Act is as follows:

(b) General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42   Pa.C.S. § 6108(b).

7. The conversation between Claimant and her counsel, Ronald Ashby, at her deposition concerning the blue binder ensues:

Q: I want to show you a blue book that you brought to my office. Did the originals come out of that blue book?
A: Yes.
Q: Tell me what this is.
A: Jim [Decedent] would keep them, those faxes and emails to Peter or to Nick or to anyone at the company.

Claimant's counsel submitted the faxes and communications copied directly from the blue binder (Exhibit C–10). During cross examination, defense counsel allowed Claimant to review Guthrie Exhibit D–1 and submitted it into the record with no objection by Claimant's counsel. Guthrie Exhibit D–1 came from the exact same binder. Claimant's position is contradicted by her own testimony. This Court finds the Board and the WCJ correctly held Claimant's testimony justified a presumption of reliability regarding the preparation and maintenance of the documents.

■■■ Claimant next argues that the WCJ erred when he sustained two objections to statements made during her deposition based on hearsay. Under the relaxed evidentiary rules in administrative proceedings,[8] hearsay may be admissible and may support findings of fact in certain circumstances. *Rox Coal Co. v. Workers' Compensation Appeal Board, (Snizaski)*, 570 Pa. 60, 807 A.2d 906 (2002). In *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976), this Court set forth the following guidelines with respect to the use of hearsay to support findings of fact in administrative proceedings:

> (1) hearsay evidence, *properly objected to*, is not competent evidence to support a finding of the Board; (2) hearsay evidence, *admitted without objection*, will be given its natural and probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand.

*Walker*, 367 A.2d at 370 (citations omitted)(emphasis in the original).

The Company prepared Exhibit D–1, a list of preserved objections logged during the April 10, 2002, hearing. The sustained objections that Claimant challenges pertain to her testimony about a telephone conversation she overheard between Decedent and Mr. Yu. Both objections involved out-of-court statements offered to establish that Decedent was forced to travel to Taiwan. Claimant contends this evidence should have been admitted as an admission by Mr. Yu that Decedent was under the control of the Company.[9]

■■■ Claimant's testimony presents a "double hearsay" problem, which is an out-of-court declaration containing another out-of-court declaration. *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406 (1999). In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. *Osborne v. Cambridge*

---

Q: This was a practice of his for how long?
A: Forever.
Q: He didn't work for him forever.
A: Any company, yes, anything he would receive, he would keep.
Q: So this is both ways, what he sent to them and what they sent to him?
A: Yes.

Deposition of Guthrie, at 30. R.R. at 31.

8. "Neither the Board nor any of its members nor any of its workers' compensation judges shall be bound by common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify the same." Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

9. Claimant argues these statements are not hearsay under Rule 803(25) of the Pennsylvania Rules of Evidence, Admission of a Party Opponent: "[t]he following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness ... [t]he statement is offered against a party and is ... the party's own statement in an individual or representative capacity ..."

*Township*, 736 A.2d 715 (Pa.Cmwlth.1999). This requirement is satisfied when each statement comes within an exception to the hearsay rule. *Osborne*, 736 A.2d at 720. Here, Claimant's testimony as to both Mr. Yu's statements to Decedent and Decedent's statements to Claimant must fall into a hearsay exception to be admissible.[10]

The first layer of hearsay is Claimant's testimony regarding statements made by Mr. Yu to Decedent. The exchange at the deposition went as follows:

A [Claimant]: Yes, I was there the day [Decedent] was talking to [Peter Yu] on the phone. I was downstairs in his office.

Q [Mr. Ashby, Claimant's counsel]: What did [Decedent] tell [Mr. Yu]?

A: That because he had come back from traveling most of October and that he was really busy with upcoming events at the end of the month, and we also had some family commitments, that he really did not want to go, not because of the family commitments but—

Q: Did the [Mr. Yu] respond at all to that?

\* \* \* \* \* \*

Q: Did [Mr. Yu] respond?

A: I am sure that [Mr. Yu] did.

Q: I didn't ask you that.

A: Yes.

Q: Do you know what [Mr. Yu] said? Did you hear what [Mr. Yu] said?

A: No.

Q: Did [Decedent] ever tell you what [Mr. Yu] said?

A: Yes and no because I was there in the room.

Q: Did [Decedent] ever tell you what [Mr. Yu] said?

A: Yes. That [Decedent] had to go.

Ms. Duffy [Defense counsel]: Objection. Move to strike. Calls for a hearsay response.

\* \* \* \* \* \*

Q: Prior to leaving, did [Decedent] indicate to you whether or not he wished to go to Taiwan at the time he was going?

Ms. Duffy: Objection. Calls for a hearsay response.

Mr. Ashby: You can answer.

A: He said he didn't want to go, yes.

Deposition of Guthrie, at 31–34; R.R. at 32–35.

Claimant argues the out-of-court statements by Mr. Yu to Decedent were Mr. Yu's statements as president of the Company and constitute admissions. Mr. Yu did not testify at the hearing but his presence was immaterial if his statements qualify under the exception. But in any event, since Claimant admitted she did not hear

---

**10.** Claimant failed to argue in her brief the existence of a double hearsay problem and an applicable exception to the second layer of hearsay involving Decedent's responses to Mr. Yu resulting in waiver of the issue. As hearsay, these statements are not competent to support a finding of the WCJ. Although Claimant did not advance any other argument, the statements made by Decedent to Claimant could fall under two hearsay exceptions: (1) Rule 803(3), pertaining to Decedent's state of mind, or (2) Rule 803(1) as a present sense impression. Even if they were not hearsay, they are not competent to support a finding that Decedent was under such control by the Company to travel to imply employee status. All other documented evidence supports the contrary. The finding that Decedent continued to work with the Company as a manufacturer's representative which included continuing contact and the possibility of travel is clearly supported by evidence of record.

what Mr. Yu said, the objection to these statements was properly sustained.[11]

■ Also, Claimant insists that Decedent was an officer of the Company based on the vice president title on his business card. Claimant relies on Section 104 of the Workers' Compensation Act,[12] which defines the term "employe" and provides:

[E]very executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation, except elected officers of the Commonwealth or any of its political subdivisions, shall be an employee of the corporation ... for purposes of this Section, an executive officer of a for-profit corporation is an individual who has an ownership interest in the corporation ... of at least five per centum ...

Claimant offered the photocopy of Decedent's business card to establish that he was an officer of the Company. The Board properly pointed out there was no evidence that Decedent was either elected or appointed according to the bylaws or charter of the Company or that he held an ownership interest of at least five percent. This Court finds no error.

■ Claimant also argues that the WCJ and the Board erred in holding Decedent was not an employee but an independent contractor at the time of his death. An independent contractor is not entitled to benefits because of the absence of a master/servant relationship. *Am–Can,* 762 A.2d at 330. Employee or independent contractor status is the crucial threshold determination that must be made to determine the eligibility for workers' compensation benefits. *Id.* A determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case. *Id.* The claimant bears the burden of establishing an employer/employee relationship in order to receive benefits. *Id.*[13]

Claimant asserts that the evidence of the Company's control over Decedent during the Taiwan trip was not accorded the weight by the Board or the WCJ that it

**11.** The Superior Court examined this exact factual pattern in *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984). In that case, Martin Kemp, the decedent, had a phone conversation with Dr. Lopusniak while Daniel Brown was in the room. Mr. Brown testified he did not hear the doctor's statements. Mr. Kemp's widow attempted to argue the conversation which included statements made by Mr. Kemp to Mr. Brown relating to what the doctor said was not hearsay. The Court concluded there was

[n]o question that the testimony available from Mr. Brown concerning his conversations with [Mr. Kemp] with respect to any alleged statements by Dr. Lopusniak during the phone call would constitute hearsay ... [Mrs. Kemp's] only argument regarding the admissibility of such testimony was that it falls under the exception to the hearsay rule relating to admissions against interest by a party ... we find a lack of merit in that assertion, as the witness did not himself hear Dr. Lopusniak make any statements ...

*Kemp,* 473 A.2d at 1373.

**12.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 22.

**13.** In determining employee or independent contractor status, certain criteria serve as guideposts for review. *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389 (1968). These elements include control of the manner work is to be done, responsibility for result only, terms of agreement between the parties, the nature of the work or occupation or business, which party supplied the tools, whether payment is by time or by the job, whether the work is part of the regular business of the employer, and the right to terminate the employment at any time. *Am–Can,* 762 A.2d at 333. The primary factors to be considered are the control over the work to be completed and the manner in which it is to be performed. *Id.*

deserved. Claimant maintains the Company controlled the time, place and manner in which Decedent performed his work during the trip particularly since the Company paid for the airline ticket and arranged the travel times. Claimant also argues the evidence revealed Decedent did not make any sales while in Taiwan but merely reviewed work at the Company's factories.[14]

■ The WCJ scrutinized all the evidence and found Claimant credible in part, but rejected the conclusion that an employer/employee relationship was established. The WCJ is the ultimate finder of fact unless the Board takes additional evidence. *Taulton v. Workers' Compensation Appeal Board (USX Corp.)*, 713 A.2d 142 (Pa.Cmwlth.1998). Thus, the authority of the WCJ over questions of credibility, conflicting medical evidence, and evidentiary weight is beyond question. *Sherrod v. Workers' Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth.1995).

In summary, by rejecting Claimant's argument, the WCJ chose to focus on the faxes and tax returns of Decedent which indicated a definitive employment change between Decedent and the Company, one from employee to independent contractor. The first crucial fax states, "[a]s per my request, please send me on letter head the following statement; To [w]hom [i]t [m]ay [c]oncern, Jim Guthrie [Decedent] works for the Travelers Club Luggage [Defendant] as an independent sales representative. He is not a direct employee of Travelers Club Luggage, Inc. [Defendant] . . ." Fax from Decedent to Christine Kim, controller of the Company, May 30, 2000; Guthrie Exhibit D–1 at 1; R.R. at 54a. Another document contained this language verbatim, on the Company's letterhead, signed by Christine Kim, dated May 31, 2000. This correspondence is substantial evidence that supports the WCJ's legal conclusion that Decedent was an independent contractor well before his death in Taiwan in October, 2000. Also, the fax dated August 9, 1999, further supported the WCJ's conclusion that Decedent was an independent contractor. This three page communication from Decedent to Mr. Yu identified Decedent's current business and, more importantly, reviewed the "new agreement" between the parties. Fax from Decedent to Peter Yu, August 9, 1999; Guthrie Exhibit D–3 at 2; S.R.R. at 2b.[15]

Also, Decedent's intention to represent new companies and to abandon his title with the Company were considered persuasive to the factfinder: "[o]ther line representation . . . no problem . . . I will advise you of all lines I get involved with and certainly know that competitor lines are not allowed"; "[t]itle . . . no problem . . . would be stupid to use title and then show other company products. I do not plan or

---

14. Claimant cites to several cases whose holdings do not control this controversy. *See Village Auto Body v. Workers' Compensation Appeal Board (Eggert)*, 827 A.2d 570 (Pa.Cmwlth. 2003); *Wells Fargo Company v. Workers' Compensation Appeal Board (Pacheco)*, 764 A.2d 1147 (Pa.Cmwlth.2000); *Evans v. Workers' Compensation Appeal Board (Hotwork, Inc.)*, 664 A.2d 216 (Pa.Cmwlth.1995); and *Lenzner Coach Lines v. Workers' Compensation Appeal Board (Nymick, Sr.)*, 158 Pa.Cmwlth.582, 632 A.2d 947 (1993). In each of these cases, an employee/employer relationship was clearly established by the claimant and the issue addressed was whether the injury occurred during the scope and course of his/her employment.

15. The document cites August 1, 1999, as the "start date" for the new agreement and recited various changes Decedent planned to undertake in the future as a result of his change in job status. Company Exhibit D–3 at 2; S.R.R. at 2b.

[sic] embarrassing myself so do not worry here ..." Guthrie Exhibit D–3 at 2; S.R.R. at 2b. The fax indicated the parties discussed Decedent's change in job, reached an agreement that Decedent would no longer be an employee but an independent contractor, and recorded that Decedent was free to engage in business with other manufacturers not in direct competition with the Company well in advance of Decedent's Taiwan trip.[16] There is ample evidence to support the conclusion of the WCJ and the Board that Decedent was an independent contractor.[17]

Accordingly, we affirm.

### ORDER

AND NOW, this 21st day of July, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

16. Two other faxes recorded the transition of Decedent from employee to independent contractor. In the fax dated August 18, 1999, Decedent informed Mr. Yu that he was "now working with Colombian Bags ... a leather resource and Omron, a medical instrument company. Neither interfere with what I am doing with you." Guthrie Exhibit D–3 at 6; S.R.R. at 40b. This fax indicated Decedent began to work with other companies with the Company's knowledge and consent. The fax dated November 9, 1999, refers to a Taiwan trip scheduled prior to Decedent's death: "As to trip ... very much would like to go with you ... but ... you are correct ... I am on my own now and not where I can afford to pay for this trip...." Fax from Decedent to Peter Yu, November 9, 1999; Company Exhibit D–3 at 8; S.R.R. at 44b.

17. The WCJ also relied on Decedents tax returns for 1999 and 2000. Decedent filed a Schedule C, denoting self-employment as a manufacturer's representative and itemized and deducted all business related expenses. Tax Return, Schedule C, January 1 through December 31, 2000; S.R.R. at 4b–14b.