**Lionell GRAVES, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA HOUSING AUTHORITY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 5, 2009.

Decided Oct. 23, 2009.

David H. Oh, Philadelphia, for petitioner.

Barbara L. Young, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Lionell Graves (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of Claimant's claim petition on the basis that he was not injured while in the course and scope of his employment.[2] Claimant asserted that even though he was off-duty when injured, he was entitled to compensation because he was acting as a police officer on the night in question. In this appeal, we consider whether the WCJ erred in relying upon the testimony of Claimant's supervisor that Claimant's actions were inconsistent with those of a police officer. Finding no error, we affirm.

Claimant has been employed by the Philadelphia Housing Authority (Employer) since 1991 as a patrolman assigned to housing projects in North Philadelphia. On April 22, 2006, Claimant sustained injuries to his left elbow, right hip and groin that were caused by gunshots. At the time of the shooting, Claimant was off-duty, and he was not at a housing project. He was shot at 2:00 a.m. at a tavern in South Philadelphia where a private party

---

1. The case was reassigned to this author on August 31, 2009.

2. In a claim petition proceeding, the claimant has the burden of proving all elements necessary to support an award of benefits, including that he was injured while in the course and scope of his employment. *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank)*, 958 A.2d 1118, 1123 (Pa.Cmwlth.2008) (citing *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993)).

was taking place. Nevertheless, Claimant believed that he was injured in the course of his employment, asserting that he was acting to protect the public at the time of the incident. Employer disagreed with his claim for workers' compensation and denied liability. The WCJ conducted a hearing on the claim petition.

At the hearing, Claimant testified that on the night of the incident, he was out with friends visiting clubs in Philadelphia's "Old City" area. Claimant was wearing street clothes and driving his personal vehicle. He was also carrying his personal firearm because he is not permitted to carry his service revolver off-duty. At approximately 2:00 a.m., Claimant left his friends and went to a bar in South Philadelphia to attend a private party. Claimant knocked on the bar's side door and was admitted by the bouncer. Claimant identified himself to the bouncer as an off-duty officer and stated that he was carrying a gun.

At some point, an individual named Dante entered the bar. Claimant saw the bouncer look at the bar owner, who was standing behind the bar, and make a hand motion with his index finger pointing. Claimant took this signal to mean that something was wrong. The owner began arguing with Dante, and Claimant noticed that Dante had a "bulge on his right side." Reproduced Record at 12 (R.R. ___). Claimant stood up, identified himself as a police officer and asked Dante to leave. Dante replied in a rude manner, prompting Claimant to tell the owner to call 911. Nevertheless, Dante left and, shortly thereafter, Claimant also left. Claimant stated that when he left the building, he encountered Dante standing in the street with a gun pointed at him. Claimant testified that he responded by identifying himself as a police officer and then walked towards Dante with the intent to arrest him. Claimant did not draw his gun. Dante shot Claimant in the hip and groin and Claimant fell backwards into the bar, managing to shut the door behind him. Dante then shot through the door, hitting Claimant in the elbow; the bouncer was also shot. After assessing his wounds, Claimant drew his weapon and attempted to go back outside. At that point, the police arrived and took Claimant to the hospital.[3]

At the next hearing, Employer presented the testimony of John Haggerty, Assistant Police Chief, Philadelphia Housing Authority. On April 24, 2006, Haggerty learned that Claimant had been involved in an off-duty shooting, and he assigned a detective and an investigator to investigate the incident. They gathered Philadelphia Police Department reports, interviewed witnesses to the incident, including the bouncer and the bar owner, and interviewed Claimant himself. Haggerty then wrote a report of his findings. Haggerty concluded that Claimant was actually working at the bar as a bouncer. The shooting occurred when Dante was ejected from the bar and discharged his weapon through the door into the bar. Claimant was not taking any police action at all; Claimant was just a victim by virtue of standing next to the door. Claimant's counsel objected to the report as hearsay and also to Haggerty's testimony about the contents of the report. The WCJ allowed Haggerty to explain the conclusions he reached in the report but sustained the objection to the admissibility of the report.

---

**3.** Because the sole issue involves course and scope of employment, we will not summarize Claimant's medical evidence or his testimony regarding the extent of his injuries and disability.

Haggerty agreed that in certain circumstances Claimant was authorized to take police action while off-duty.[4] Drawing on his 43 years of law enforcement experience, Haggerty opined that Claimant's actions on the night he was injured were not police actions. He based this opinion on Claimant's testimony alone. Haggerty explained, for example, that once Claimant observed the bouncer's hand motion and the bulge in Dante's pocket, the appropriate police response would have been to frisk Dante to see if he had a weapon; take the weapon; and arrest Dante if the weapon was illegal. Further, when Dante pointed a gun at Claimant outside the bar, police procedure did not direct that Claimant identify himself as an officer, especially since he had already done so inside the bar. More importantly, to walk towards a person with a drawn gun, as Claimant said he did, in no way comported with an appropriate police action. Rather, Haggerty explained that an appropriate police response consisted of "[ducking] for cover and [taking your] weapon out." R.R. 47. Claimant's counsel initially objected to Haggerty's testimony regarding what would constitute an appropriate police response to Dante's actions, but he subsequently withdrew those objections.

The WCJ issued a decision denying Claimant's claim petition. She rejected as not credible Claimant's testimony regarding the events of April 22, 2006, except for his testimony regarding his gunshot wounds. The WCJ accepted Haggerty's testimony as credible.[5] The WCJ made her credibility determinations on: the demeanor of the witnesses; Claimant's denial of any prior physical problems even though Claimant was on light duty at the time of the incident; Haggerty's knowledge of correct police procedure by virtue of his years of experience and position in management; and the fact that Haggerty's testimony was consistent with common sense while Claimant's was not. In accordance with her credibility determinations, the WCJ found that

> if Claimant were truly acting as a police officer, he would have investigated when he first suspected that Dante had a gun. Additionally, Claimant would not have approached a man he had recently argued with and was holding a gun, instead of taking over and drawing his own weapon before attempting to talk to the individual.... This [WCJ] finds that Claimant was involved in the altercations inside and outside of the bar as a civilian and was not acting within the course and scope of his job as a police officer when he was injured.

WCJ Decision, March 31, 2008, at 4; Finding of Fact 5. Claimant appealed and the Board affirmed. Claimant then petitioned for this Court's review.[6]

∎ On appeal, Claimant raises one issue for our consideration. Claimant argues that the WCJ and the Board erred in relying on Haggerty's testimony because it was impermissibly based on the report he

---

4. Based on our disposition of the case, we make no determination as to whether Claimant was actually authorized under the law to take police action.

5. The WCJ is the ultimate fact finder and determiner of credibility, and is free to accept, in whole or in part, the testimony of any witness. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa.Cmwlth.1995).

6. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

compiled, which was hearsay. Claimant contends that the Board erred in determining that the report qualifies as a business record exception to the hearsay rule. Claimant requests that this Court remand the matter for the WCJ to disregard all of Haggerty's testimony and then determine whether Claimant met his burden based on the remaining evidence in the record.

 The rules of evidence are relaxed in workers' compensation proceedings, and hearsay evidence may be admissible and support findings of fact in certain circumstances. *Guthrie v. Workers' Compensation Appeal Board (The Travelers' Club, Inc.)*, 854 A.2d 653, 659 (Pa.Cmwlth.2004). However, it is axiomatic that: (1) hearsay evidence, properly objected to, is not competent evidence to support a finding; and (2) hearsay evidence admitted without objection may support a finding of fact if corroborated by competent evidence in the record, but a finding of fact based solely on hearsay cannot stand. *Id.*

Haggerty's testimony is not inadmissible on hearsay grounds. The critical issue in this case was whether Claimant was taking police action on the night he was injured, thereby bringing him into the scope of employment. Haggerty discussed his report and the conclusions of his investigation; however, we need not reach the question of whether the report should have been admitted under the business record exception to the hearsay rule. Haggerty based his opinion that Claimant was not acting as a police officer on Claimant's own version of what happened on the night he

was injured. Stated otherwise, Haggerty's opinion testimony was not based on out-of-court hearsay but, rather, on Claimant's in-court testimony. Haggerty testified about how a police officer would respond to the situation Claimant described, and the WCJ relied upon this testimony to find that Claimant acted as a civilian and not as a police officer. As such, the WCJ's findings are based on substantial, competent evidence. Claimant bore the burden of proof in this proceeding, and the WCJ acted well within her discretion by rejecting Claimant's testimony as not credible. Indeed, because the WCJ did not credit Claimant's account of how the incident occurred, there is no way to find that Claimant's injury was work-related.[7]

Accordingly, the order of the Board is affirmed.

Judge BUTLER did not participate in the decision in this case.

### ORDER

AND NOW, this 23rd day of October, 2009, the order of the Workers' Compensation Appeal Board dated December 29, 2008, in the above captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge McCLOSKEY.

I agree with the majority opinion insofar as it concluded that the testimony of John Haggerty, Assistant Police Chief for the Philadelphia Housing Authority (Em-

---

7. The dissent contends that the WCJ should have concentrated on the "factual question" of whether Claimant acted "with intent" to arrest a person. First, the WCJ did not find Claimant credible. That credibility determination alone renders Claimant's statements about his intent irrelevant. Second, Claimant's subjective "intent" cannot be determinative of whether he was acting as a police

officer while off-duty. If it were, then every off-duty officer could prove "intent" to act as an officer, even where that officer violates all police protocol, simply with an after-the-fact, self-serving description of his state of mind.

The *only* issue before us is whether Haggerty's testimony constitutes impermissible hearsay. Because the dissent agrees that it does not, this should end the inquiry.

ployer), did not constitute impermissible hearsay as alleged by Lionell Graves (Claimant). However, I respectfully dissent insofar as the majority opinion concluded that said testimony was sufficient to support the determination of the Workers' Compensation Judge (WCJ) that Claimant was acting outside the course and scope of his employment at the time of the shooting.

As the majority opinion references, Mr. Haggerty acknowledged that in certain circumstances Claimant was authorized to take police action while off-duty. However, Mr. Haggerty testified as to his opinion that Claimant's actions on the night of the shooting did not constitute proper police action.[1] I do not believe that Claimant's alleged failure to follow proper police protocol removes him from the course and scope of his employment. Indeed, following this logic, the majority would have to conclude that any employee in any occupation who violates a work procedure/protocol takes himself out of the course of employment, thereby rendering himself ineligible for workers' compensation benefits. In essence, such reasoning injects negligence into a workers' compensation case, a theory that workers' compensation was specifically designed to avoid.

Further, while the majority points out that the WCJ rejected Claimant's testimony as not credible, the WCJ's findings of fact essentially mirror Claimant's recitation of the events of the night in question, including the fact that Claimant repeatedly identified himself as a police officer throughout the incident, even in the moments immediately preceding the shooting. Indeed, with certain parts of Mr. Haggerty's memorandum/report excluded by the WCJ as hearsay, which parts included the chronology of events on the night in question, Claimant's testimony was the only evidence upon which the WCJ could rely for these findings.

Moreover, Mr. Haggerty specifically testified before the WCJ that housing authority officers are authorized to take police action in certain circumstances while off-duty, including making arrests.[2] (R.R. at 42a–43a, 55a). The question in these types of cases is whether the off-duty officer is furthering his employer's interests and whether the off-duty officer's actions are customary and encouraged by an employer. Consequently, rather than focus on questions relating to the manner of Claimant's action and the conformity to proper police action, the WCJ should have concentrated her evaluation on the factual question of whether Claimant, in acting on the belief that he was authorized to make arrests while off-duty, took action with the intent to accomplish an arrest of the person who shot him. The record is devoid of any evidence or findings in this regard. Hence, I would vacate the decision and order of the Workers' Compensation Appeal Board (Board) and remand this case to the Board, with the direction to remand the matter to the WCJ, for additional evidence and further findings in this regard.

---

1. In this regard, Mr. Haggerty noted Claimant's failure to frisk the assailant upon noticing a bulge in the assailant's pocket and his walking towards the assailant outside the bar with a gun pointed directly at him instead of ducking and taking cover.

2. Admittedly, Mr. Haggerty's testimony as to the extent of a housing officer's authority is confusing, as the officer's powers and duties appear to be limited to the grounds and buildings of the housing authority itself, with the exception of hot pursuit. See Section 10 of the Act of May 28, 1937, P.L. 955, as amended, 35 P.S. § 1550(f).