# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Labor and Industry, : 
Uninsured Employers Guaranty Fund, : 
Petitioner : 
 : 
v. : No. 2334 C.D. 2014
 : Submitted: June 19, 2015
Workers' Compensation Appeal Board : 
(Ihor Shyra and Ester Auto Group, : 
LLC), : 
Respondents : 

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON** **FILED: August 26, 2015**

In this appeal, the Uninsured Employers Guaranty Fund (UEGF) asks whether the Workers' Compensation Appeal Board (Board) erred in affirming a Workers' Compensation Judge's (WCJ) decision finding UEGF liable for death benefits under the Workers' Compensation Act (Act)[1] based on the death of Ihor Shyra (Decedent). UEGF contends the WCJ's necessary findings are not supported by substantial, competent evidence, but rather inadmissible hearsay evidence. Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4; 2501-2708.

## I. Background & Procedural History

Decedent's minor son, Vladimir Shrya (Claimant), filed a fatal claim petition for compensation of dependents of deceased employees (fatal claim petition) and a claim petition for benefits from the UEGF (UEGF claim petition) (collectively, petitions). In the petitions, Claimant alleged Decedent died on September 30, 2010, from head trauma sustained in a motor vehicle accident in the course and scope of his employment with Ester Auto Group, LLC (Ester), an uninsured employer. UEGF denied all material allegations in the UEGF claim petition.

The petitions were consolidated and assigned to a WCJ. In support of the petitions, Claimant's mother, Natalia Zhilkina (Mother), testified she and Decedent divorced in 2009, but they remained in the same house to care for their son. Mother and Decedent shared financial information, such as bills and bank statements, with each other, although she did not have access to Decedent's bank accounts. WCJ's Op., 2/12/13, Finding of Fact (F.F.) No. 1a.

Mother testified Decedent worked solely for Ester and no one else beginning in 2005. Ester is in the business of selling cars by taking clients to auctions. Decedent regularly attended auctions out of state. Decedent worked with another employee, Ihar Baylsh. F.F. No. 1b.

According to Mother, Decedent routinely worked for Ester on Wednesdays and Fridays, and on Thursdays every three or four months. Ester told Decedent which auctions to attend. Decedent regularly traveled to Manheim Auto

2

Auction on Fridays and other auctions on Wednesdays and Thursdays. When attending auctions, Decedent drove one of Ester's vehicles, not his personal vehicle. Ester issued Decedent an auction ACCESS card in 2005. Ester always supplied the funds to buy the cars, and the clients paid Ester. Ester paid Decedent a commission for each car he sold. According to Mother, Decedent sold about six vehicles per month and earned commissions between $500 and $1,500 per car. F.F. No. 1c.

Of significance to our reasoning, on September 30, 2010, Decedent told Mother that he and Ihar Balysh were taking Ester's clients to an auto auction. Later that day, police officers came to Mother's home and informed her Decedent was killed in a motor vehicle accident on the Pennsylvania Turnpike. F.F. No. 1d.

On cross-examination, Mother acknowledged she indicated on the notice of claim that Decedent made $700 per week in wages, but she clarified he actually earned commissions. Mother never worked for Ester. She filed Decedent's 2009 tax return in 2010. F.F. No. 1e.

In addition, Claimant presented the testimony of Joseph D'Allessio, a Pennsylvania State Police Trooper (Trooper). Trooper testified he was the first responder on the scene of the single-vehicle accident involving a 2001 Dodge Durango on the morning of September 30, 2010. The vehicle was on the grass berm embankment of the Pennsylvania Turnpike, resting against a tree, severely damaged. There was heavy rain that morning. Trooper observed the driver and passenger inside the vehicle and two persons outside the vehicle. Decedent was

the driver of the vehicle. Decedent was covered in blood, slumped over the right center console. Trooper testified there was nothing he could do for him. Trooper checked Decedent's vitals, driver's identification, the registration of the vehicle, and the insurance card. The vehicle was registered to Ester and insured by Piaza Insurance Company. F.F. No. 6a-d.

Claimant also submitted the deposition testimony of Clark Hood, M.B., C.H.B., a medical doctor board certified in anatomic and clinical pathology (Pathologist), and Dave March, Deputy Coroner of Chester County (Coroner). Pathologist opined Decedent died from head injuries sustained in the accident. Coroner testified, based on his personal observation and investigation, that Decedent sustained injuries to his head, neck and chest as a result of the accident. F.F. Nos. 8a-c, 9a-c.

UEGF made hearsay and lack of foundation objections to the substantive portions of Mother's and Trooper's testimony, which the WCJ overruled.

No one appeared on behalf of Ester.[2] Claimant and UEGF submitted bank records from Chase Bank, reflecting deposit activity for Decedent's checking

---

[2] Claimant's counsel affirmed that no witnesses or representatives for Ester appeared at any time during the litigation, and the other passengers in Decedent's fatal accident either could not be reached or would not cooperate in the litigation of the petitions. WCJ's Hr'g, Notes of Testimony (N.T.), 5/31/12, at 55-56. UEGF objected to Claimant's counsel's statements regarding his efforts on the basis those statements are not competent evidence. N.T., 5/31/12, at 56. As the Board noted, although "statements made by counsel are generally not admissible to support a finding on the substantive issues in a workers' compensation claim, ... it is permissible **(Footnote continued on next page…)**

4

account from November 2009 through December 2010. Claimant also presented his birth certificate listing his birth date as December 2, 2002, and Decedent and Mother as his parents; the police crash report; motor vehicle identification card and insurance identification card; auction ACCESS identification card; and, the notice of uninsured claim. With the exception of the bank records, UEGF objected to Claimant's other exhibits as hearsay. The WCJ overruled those objections as the documents were corroborated by other testimony and there was no evidence to the contrary. F.F. Nos. 10, 16-19.

Ultimately, the WCJ found the testimony of Mother credible and persuasive. The WCJ noted Mother was married to Decedent for four years before their divorce and they continued to live together after divorcing. The WCJ found this arrangement supported Mother's knowledge regarding Decedent's job duties. There was no contradictory evidence submitted. The WCJ also credited the testimony of Trooper, Pathologist and Coroner. F.F. Nos. 12-15.

---

**(continued…)**

and appropriate to consider statements made by counsel to clarify circumstances surrounding litigation when counsel is in the best position to give essential background or procedural information." Bd. Op., 11/26/14, at 5 n.6 (citing Brady v. Workers' Comp. Appeal Bd. (Morgan Drive Away, Inc.), 923 A.2d 529 (Pa. Cmwlth. 2007)). We believe an attorney's obligation to the court is one that is unique and must be discharged with candor and with great care. Great Valley Sch. Dist. v. Zoning Hearing Bd. of East Whiteland Twp., 863 A.2d 74 (Pa. Cmwlth. 2004). Furthermore, on appeal, UEGF readily confirms "both Claimant and UEGF attempted to secure potential witnesses from [Ester] to appear at hearing. Just as Claimant was impeded in garnering evidence to support his claim, UEGF was hindered in defending against the Petition ...." Pet'r's' Br. at 16.

Based on the evidence, the WCJ found Decedent was an employee, not an independent contractor, of Ester. Decedent worked solely for Ester from 2005 through the date of his death. Ester instructed Decedent which clients to pick up and which auctions to attend. The WCJ inferred Ester had the capacity to discharge Decedent. Ester provided Decedent with the vehicle to do his job, an auction ACCESS identification card, and funds to buy the cars. The fact that Ester paid Decedent commissions without deducting taxes did not outweigh other evidence of employer-employee relationship. The WCJ found Decedent died as a result of a head trauma in a motor vehicle accident on September 30, 2010. At the time of death, Decedent was not performing a task that was different from the business of Ester, that is, selling cars. F.F. Nos. 20-21.

The WCJ further found Decedent had an average weekly wage of $1,500. The Chase Bank records show Decedent deposited $55,503 between February 8, 2010 and September 27, 2010. The average of this amount over the 37 weeks is $1,500. Finally, the WCJ found Claimant is a dependent of Decedent. F.F. Nos. 22-23.

Ultimately, the WCJ concluded Decedent was an employee of Ester, and his death occurred while he was in the course and scope of his employment with Ester on September 30, 2010. At the time of the fatal injury, Ester did not maintain Pennsylvania workers' compensation liability. The WCJ concluded Claimant, as Decedent's dependent, was entitled to death benefits at the rate of $480 per week. The WCJ granted Claimant's petitions.

UEGF appealed to the Board. It challenged the WCJ's findings on the basis they were not supported by substantial, competent evidence, but only inadmissible hearsay evidence. The Board acknowledged some of Claimant's evidence was objected-to hearsay, but some was not. Notably, the Board determined some of Mother's testimony was not hearsay because it was based on her personal knowledge as Decedent's former wife and current co-habitant at the time of his death, and it did not depend solely on Decedent's statements made to her the morning of the accident. For instance, the Board reasoned Mother had general knowledge of Decedent's work, which involved taking clients to auto auctions, sometimes in Pennsylvania, and sometimes on Thursday. She knew Ester was Decedent's only employer. She knew Decedent owned a Chrysler Pacifica, which she now possesses, and that Decedent did not drive his personal vehicle to auctions. Because Mother had access to Decedent's bank records and shared household expenses, she had knowledge of his commissions. The bank records offered by both parties reflected various deposits up to $5,000.

In addition, the Board determined Trooper's testimony that Decedent was driving a Dodge Durango, not a Chrysler Pacifica, was based on his personal observations at the accident scene and was not hearsay. However, the Board determined Trooper's statements relating the information he gathered from the registration and insurance cards were based on out-of-court declarations making them hearsay that could not support a finding. The Board further determined the registration and insurance cards constituted hearsay as well because they were not properly authenticated to satisfy the business record exception to the hearsay rule.

7

Notwithstanding the Board's rejection of certain evidence, the Board determined there was sufficient, uncontradicted non-hearsay evidence to support the WCJ's findings and conclusions.  The WCJ drew reasonable inferences from this evidence in reaching his findings and conclusions.  In addition, relying on Mathies Coal Co. v. Workmen's Compensation Appeal Board (Tau), 591 A.2d 351 (Pa. Cmwlth. 1991), the Board opined competent, circumstantial evidence supported the WCJ's findings and preponderated in favor of the conclusion reached so as to outweigh any other evidence and any inconsistent inferences.  On these grounds, the Board affirmed.  This appeal followed.[3]

## II. Issues

In this appeal, UEGF challenges the WCJ's decision on the ground that his findings and conclusions are not supported by substantial, competent evidence.  Rather, the WCJ improperly relied on hearsay or other incompetent evidence, to which UEGF properly objected.  Specifically, UEGF contests the WCJ's findings that Decedent: (1) was an employee, not an independent contractor, for Ester; (2) was acting in the course and scope of his employment when the accident occurred; and, (3) had an average weekly wage of $1,500.  F.F. Nos. 20, 21.  Alternatively, UEGF contends, even if the evidence of record could be considered competent, the Board erred by holding Claimant met his burden by circumstantial evidence of record.

---

[3] This Court's review is limited to whether there was a violation of constitutional rights or error of law, and whether necessary findings of fact were supported by substantial evidence. Am. Rd. Lines v. Workers' Comp. Appeal Bd. (Royal), 39 A.3d 603 (Pa. Cmwlth. 2013).

8

### III. Discussion

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213 (Pa. Cmwlth. 2008). As the fact-finder, matters of credibility and evidentiary weight are within the WCJ's exclusive province. Id. The WCJ is free to accept or reject the testimony of any witness, in whole or in part. Id. If the WCJ's findings are supported by substantial evidence, they are binding on appeal. Id. It is irrelevant whether there is evidence to support contrary findings. Id. The relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. Id.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. WAWA v. Workers' Comp. Appeal Bd. (Seltzer), 951 A.2d 405 (Pa. Cmwlth. 2008). Substantial evidence must be both competent and sufficient. Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.), 861 A.2d 938, 947 (Pa. 2004). In performing a substantial evidence analysis, we must view the evidence, and every reasonable inference deducible from the evidence, in a light most favorable to the prevailing party. WAWA. Generally, "questions concerning the admission and exclusion of evidence are within the sound discretion of the tribunal and are not to be reversed on appeal absent a finding of an abuse of discretion." Gibson.

The evidentiary rules in administrative proceedings, including workers' compensation proceedings, are relaxed. Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski), 807 A.2d 906 (Pa. 2002); see Section 422 of the Act, 77 P.S. §834 ("[n]either the [B]oard nor any of its members nor any [WCJ] shall be bound by the common law or statutory rules of evidence in conducting any hearing

or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same"); Section 505 of the Administrative Agency Law, 2 Pa. C.S. §505 (all relevant evidence of reasonably probative value may be received). In certain circumstances, hearsay, which is a statement other than one made by the declarant while testifying at trial or hearing offered in evidence to prove the truth of the matter asserted, may be admitted. Rox Coal; see Pa. R.E. 802 (definition of hearsay); cf. Pa. R.E. 801(c) (hearsay is generally not admissible unless an exception applies).

This Court consistently applies the following guidelines with respect to the use of hearsay to support findings of fact in administrative proceedings:

> (1) Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of the Board[;] (2) Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand.

Walker v. Unemployment Comp. Bd. of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976) (citations omitted); accord Graves v. Workers' Comp. Appeal Bd. (Phila. Housing Auth.), 983 A.2d 241 (Pa. Cmwlth. 2009); Guthrie v. Workers' Comp. Appeal Bd. (The Travelers' Club, Inc.), 854 A.2d 653 (Pa. Cmwlth. 2004). The vitality of Walker has been reaffirmed by our Supreme Court. See Rox Coal; Joyce v. Workmen's Comp. Appeal Bd. (Ogden/Allied Maint.), 680 A.2d 855 (Pa. 1996).

10

For a document to be admissible, it must be properly authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901(a); see Guthrie; see also Keystone Dedicated Logistics, LLC v. JGB Enters. Inc., 77 A.3d 1 (Pa. Super. 2013). A document not prepared by the person testifying is not automatically rendered inadmissible as long as the authenticating witness provides sufficient information relating to the preparation and maintenance of the record to justify a presumption of reliability. Guthrie. A document may be authenticated by direct proof or by circumstantial evidence. Zuk v. Zuk, 55 A.3d 102 (Pa. Super. 2012). Proof of any circumstances that will support a finding that the writing is genuine will suffice to authenticate the writing. Id.

Another fundamental evidentiary rule applicable in administrative proceedings is that witnesses must have first-hand knowledge of the subject on which they are testifying for that testimony to be admissible. Gibson; see Pa. R.E. 602 (a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter). Where an employee has died, his spouse may lay a foundation and describe the decedent's general job duties. See Guthrie (spouse testified about decedent's employment status and job duties); see also Am. Rd. Lines v. Workers' Comp Appeal Bd. (Royal), 39 A.3d 603 (Pa. Cmwlth. 2012) (spouse testified regarding job duties and payments made by the employer).

With these evidentiary principles in mind, we examine UEGF's contentions.

## A. Employer-Employee Relationship

UEGF contends substantial evidence does not support the WCJ's finding that an employment relationship existed between Ester and Decedent. According to UEGF, all evidence that might show an employment relationship was based on hearsay. As UEGF properly objected to Claimant's hearsay evidence, such evidence is not competent evidence to support a finding of fact.

In a proceeding on a claim petition, the claimant bears the burden of proving all the elements necessary to support an award of benefits. Zuchelli v. Workers' Comp. Appeal Bd. (Indiana Univ. of Pa.), 35 A.3d 301 (Pa. Cmwlth. 2011). This includes proving the existence of an employer-employee relationship. Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer), 762 A.2d 328 (Pa. 2000); Am. Rd. Lines. An independent contractor is not entitled to benefits under the Act because of the absence of a master-servant relationship. Universal Am-Can; Guthrie. Whether an employer-employee relationship exists is a question of law based on the facts presented in each case. Am. Rd. Lines; Guthrie.

"Although it is a claimant's burden to demonstrate an employer/employee relationship, ... 'neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment, and … inferences favoring the claim need make only slightly stronger appeal to reason than those opposed.'" Universal Am-Can, 762 A.2d at 330 (quoting Diehl v. Keystone Alloys Co., 156 A.2d 818, 820 (Pa. 1959)). We are mindful that the Act is remedial in nature and must be liberally construed to effectuate its humanitarian

12

objectives.  Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder), 834 A.2d 524 (Pa. 2003).

In determining whether a particular relationship is that of employer-employee or owner-independent contractor, courts consider many factors.  Am. Rd. Lines.  These factors include:

> (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

Id. at 611 (citing Hammermill Paper Co. v. Rust Eng'g Co., 243 A.2d 389 (Pa. 1968)); accord Guthrie.

Although no one factor is dispositive, control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status.  Universal Am-Can; Am. Rd. Lines.  Control exists where the alleged employer: "possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee."  Am. Rd. Lines, 39 A.3d at 611 (citing 3D Trucking v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l), 921 A.2d 1281 (Pa. Cmwlth. 2007)).

13

Here, the WCJ found factors indicative of an employer-employee relationship. F.F. No. 20. Specifically, the WCJ found: the nature of Decedent's work involved taking clients to auctions to purchase vehicles; Decedent worked only for Ester; Ester directed Decedent which auctions to attend; Ester supplied Decedent a vehicle to travel to the auctions, an Auction ACCESS card, and the money to pay for the cars; Decedent did not use his personal vehicle to travel to auctions; Decedent died in a car crash in Pennsylvania in a Dodge Durango, which was registered to and insured by Ester; and, Ester paid Decedent by commission. The WCJ based his findings on the credited testimony of Mother and Trooper, documentary evidence, and reasonable inferences drawn therefrom.

Mother testified Decedent began working for Ester in 2005. WCJ's Hr'g, Notes of Testimony (N.T.), 5/31/12, at 27. Decedent did not work for any other employer. Id. at 26-27. According to Mother, Ester was in the business of selling cars; Decedent, who was multilingual, would take clients to auto auctions to purchase cars for them. Id. at 30. Decedent regularly attended auto auctions in New Jersey and Pennsylvania. Id. at 12, 33. Decedent went to auctions at Ester's direction. Id. at 45. Typically, he went to auctions on Wednesdays and Fridays, and on Thursdays, once every three or four months. Id. at 33, 45-46. One auction he frequented was the Manheim Auto Auction in Pennsylvania. Id. at 45. Mother testified Decedent did not use his own funds or a personal credit card to purchase vehicles at auction. Id. at 42.

Mother testified Decedent owned a 2007 Chrysler Pacifica, which is now in her possession. Id. at 35. Decedent did not drive his personal vehicle to

14

auctions. Id. at 33-34, 35-36. On the morning of the accident, he left for work between 5:00 a.m. and 6:00 a.m. Id. at 27. He did not drive his personal vehicle the day of the accident. Id. at 35. Mother learned Decedent died in a motor vehicle accident from the police. Id. at 24.

Mother confirmed Decedent's picture appeared on the Auction ACCESS card, which was issued in 2005. Id. at 51; see C.R., Ex. No. C-7. She testified he did not have an Auction ACCESS card prior to employment with Ester. Id. at 51. She testified Decedent was not in the auto sales business prior to working for Ester in 2005. Id.

Mother further testified Ester paid him based on sales commissions. Id. at 40, 42. On average, Decedent sold six vehicles a month. Id. at 44. His commissions were between $500 to $1,500. Id. at 44.

Although UEGF objected to Mother's testimony on hearsay and lack of foundation grounds, the WCJ overruled the objections. Based on her relationship to Decedent and their living arrangement, the WCJ determined Mother possessed a general and approximate knowledge of Decedent's job duties, work schedule, vehicle usage, and sources of income. Mother and Decedent had a child in 2002. Id. at 20. Mother referred to Decedent as her husband even though they "technically divorced" in 2009. Id. at 19. They continued to live together in New York and shared financial information, household expenses and parenting duties. Id. at 19, 37, 40. Although she did not have access to Decedent's bank accounts, she had access to his bank financial statements and records. Id. at 37-38. She filed

15

his tax return for 2010, and she paid for his funeral. Id. at 53, 62. In light of this foundation, we conclude the WCJ did not err or abuse his discretion in determining Mother's testimony drawn from her personal knowledge was competent evidence.

Importantly, Mother testified regarding where Decedent was traveling the day of the accident. In particular, on the day of the accident Decedent told Mother he was taking clients and going to work, going to an exclusive auction. Id. at 24-25. He was also taking his co-worker, Ihar Balysh. Id. at 27-28. UEGF objected on hearsay grounds. It maintains that this testimony from Mother was not competent. The Board agreed. However, UEGF and the Board are wrong.

This testimony as to Decedent's state-of-mind constituted an exception to the hearsay rule. Thus, Rule of Evidence 803 provides that the following evidence is *not* excluded under the hearsay rule (with emphasis added):

> (3) **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa. R.E. 803(3). Pursuant to this rule, Decedent's then-existing plan to go to an auction with clients and a co-worker satisfies an exception to the hearsay rule. Therefore, the statement is competent evidence, and the WCJ committed no error when he relied upon the statement in determining that Decedent was an employee and that he was in the course of his employment at the time of death.

16

Also, Trooper testified regarding his personal knowledge based on his observations. He described the accident scene involving a 2001 Dodge Durango that was severely damaged on the grass berm embankment of the Pennsylvania Turnpike. N.T., 9/25/12, at 5. He observed four occupants of the vehicle, including Decedent who was fatally injured in the driver's seat. Id. at 7-8, 13.

In addition, Trooper testified he retrieved vehicle information from the vehicle's registration and insurance cards at the accident scene. N.T., 9/25/12, at 13. He also ran a license plate search. Id. He determined the vehicle was a 2001 Dodge Durango, which was registered to and insured by Ester. Id. Claimant offered the registration and insurance cards into evidence, which identified Ester as the registrant and the insured. C.R., Ex. No. C-6. The WCJ admitted this evidence, over UEGF's lack of foundation and hearsay objections. N.T., 5/31/12, at 15, 51.

Although the Board determined this evidence constituted hearsay and was not properly authenticated, we respectfully disagree. As to hearsay, the registration and insurance cards are documents which may be used to prove something other than their contents. In other words, while the documents may not be used to prove the particulars of registration or insurance coverage, the documents may be used to prove another fact in question, ownership of the vehicle.

Generally, an out-of-court statement may not be used to prove the truth of the matter asserted in the statement. See Pa. R.E. 802. However, as comments to Rule 801 illustrate, "[t]here are many situations in which evidence of

17

a statement is offered for a purpose other than to prove the truth of the matter asserted." Pa. R.E. 801, comment. So, Rule of Evidence 411, entitled "Liability Insurance," provides:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. <u>But the court may admit this evidence for another purpose, such as proving </u>a witness's bias or prejudice or proving agency, <u>ownership, or control.</u>

Pa. R.E. 411. Under this rule, the insurance card cannot be used to prove whether the vehicle was insured, but it can be used to prove a different fact, that Ester owned or controlled the vehicle in question. Offered for such a purpose, the evidence is non-hearsay and competent to support a finding of ownership. Indeed, the WCJ made such a finding: "Additionally, Ester Auto Group provided the vehicle for [Decedent] to do his job …." F.F. No. 20.

Further, this competent evidence also gives rise to a rebuttable presumption in favor of the Claimant here: that the operator of a vehicle was operating the vehicle with the permission of the owner. <u>Exner v. Safeco Ins. Co. of Am.</u>, 167 A.2d 703 (Pa. 1961).

As to authentication of the insurance card, we discern no error in the WCJ's determination that it was authentic under the circumstances here. Specifically, Trooper testified he followed protocol for obtaining information when the driver of the vehicle is unresponsive. N.T., 9/25/12, at 12. He retrieved Decedent's driver's license and identification card from his wallet. <u>Id.</u> at 12-13. He also obtained the registration and insurance cards from the vehicle. <u>Id.</u> at 13.

18

Moreover, UEGF cross-examined Trooper regarding the information he retrieved from the registration and insurance cards. Id. at 18-19. UEGF offered no basis upon which to cast doubt on the authenticity of the records. Given relaxed evidentiary rules as well as the deferential standard applicable to the WCJ's evidentiary rulings, we conclude the WCJ did not err or abuse his discretion by admitting the insurance card. Therefore, this evidence was competent to support a finding that the Dodge Durango was owned and controlled by Ester.

Based on the above competent evidence, there was a reasonable basis from which the WCJ could draw an inference or inferences that an employment relationship existed between Decedent and Ester. There was no evidence offered to the contrary and little to infer that Decedent was an independent contractor. We conclude the WCJ's determination that an employment relationship existed is supported by substantial, competent evidence and the reasonable inferences drawn therefrom.

### B. Course and Scope of Employment

Next, UEGF challenges the WCJ's finding that Decedent was acting within the course and scope of his employment when he was killed in the motor vehicle accident on the basis that it is not supported by competent evidence. UEGF contends Claimant's evidence regarding course of employment is inadmissible hearsay.

Where an injury occurs off of an employer's premises, a claimant must show the injury occurred "while the employe is actually engaged in the

furtherance of the business or affairs of the employer" for the injury to be compensable. Section 301(c)(1) of the Act, 77 P.S. §411(1); accord Marazas v. Workers' Comp. Appeal Bd. (Vitas Healthcare Corp.), 97 A.3d 854, 861 (Pa. Cmwlth. 2014), appeal denied, ___ A.3d ___ (Pa., No. 569 EAL 2014, filed April 1, 2015), 2015 WL 1542613. Whether an employee is acting within the course of his employment is a legal determination to be made based on the WCJ's factual findings. Marazas; Sloane Nissan v. Workers' Comp. Appeal Bd. (Zeyl), 820 A.2d 925, 927 (Pa. Cmwlth. 2003). The operative phrase, "actually engaged in the furtherance of the business or affairs of the employer," must be liberally construed. Marazas, 97 A.3d at 861.

As a general rule, injuries sustained by an employee traveling to or from his place of employment are not compensable under the Act. Bensing v. Workers' Comp. Appeal Bd. (James D. Morrissey, Inc.), 830 A.2d 1075 (Pa. Cmwlth. 2003). This rule is grounded on the recognition that in the usual case, an employee traveling to or from work is not engaged in the furtherance of the employer's affairs. Id.

However, an injury sustained by a employee while traveling to or from work may be compensable if: "(1) the employee's employment contract included transportation to and from work; (2) the employee had no fixed place of work; (3) the employee was on a special mission for the employer; or (4) special circumstances indicate that the employee was furthering the business of the employer." Sloane, 820 A.2d at 927. When a traveling employee is injured after setting out on the business of his employer, it is presumed that he was furthering

20

the employer's business or affairs at the time of the injury. <u>Investors Diversified Serv. v. Workmen's Comp. Appeal Bd. (Howar)</u>, 520 A.2d 958 (Pa. Cmwlth. 1987).

Here, Mother testified Decedent's job duties included traveling to auto auctions with clients to purchase vehicles. N.T., 5/31/12, at 30. Decedent regularly went to auctions on Wednesdays, Fridays, and sometimes Thursdays. <u>Id.</u> at 33, 45-46. One auction Decedent frequented was in Manheim, Pennsylvania. <u>Id.</u> at 45. Mother testified Decedent did not drive his personal vehicle, a 2007 Chrysler Pacifica, which is now in her possession, to the auctions. <u>Id.</u> at 35. Decedent did not drive his personal vehicle on the date of the accident. <u>Id.</u>

Saliently, Mother also testified that on the morning of the accident Decedent told her he was taking clients and a co-worker to an auction. N.T. 5/31/12, at 24-28. As discussed above, this testimony satisfied the "present state-of-mind" exception to the hearsay rule, and it was competent evidence. By itself this testimony supports the WCJ's conclusion.

Moreover, Trooper testified he arrived at the scene of a single vehicle accident involving a Dodge Durango on Thursday, September 30, 2010. N.T., 9/25/12, at 5. He observed Decedent, who appeared lifeless, in the driver seat as well as three passengers. <u>Id.</u> at 7-8.

In sum, Decedent planned to take clients and a co-worker to an auction on a Thursday morning, consistent with his past employment relationship.

Decedent was not driving his personal vehicle, but rather a Dodge Durango owned by Employer. He was involved in a fatal motor vehicle accident in Pennsylvania later that morning. There were three passengers in the car. Under these circumstances, a fact-finder could reasonably infer that Decedent was driving to an auction with clients for Ester when he died. Moreover, there was no evidence to show Decedent was not acting in furtherance of Ester's business when the accident occurred. We conclude that there was competent evidence from which the WCJ could draw an inference that Decedent died in the course of his employment.

## C. Average Weekly Wage

Next, UEGF contends the WCJ erred in finding Decedent had an average weekly wage of $1,500. According to UEGF, the record lacks substantial, competent evidence to support the calculation of average weekly wage as well as the corresponding benefit rate. Although both parties presented Decedent's bank records, the records do not confirm any deposits or checks made by Ester, merely cash deposits that may or may not be attributable to Ester. UEGF requests a remand for presentation of additional evidence to confirm actual payments made to Decedent.

Section 309 of the Act provides for various formulas for computing an employee's average weekly wage depending on the method by which the employee is paid. 77 P.S. §582. An employee's average weekly wage must reflect what he expected to earn had he not been injured, or in this case, killed. Hannaberry. Given the humanitarian purposes of the Act, in making a determination of an

22

average weekly wage, the benefit of the doubt should be given to the employee. Id.

Here, the WCJ found: "[Decedent] had an average weekly wage of $1,500.00. The Chase Bank records show that [Decedent] deposited $55,503.00 between February 8, 2010 and September 27, 2010. The average of this amount over the 37 weeks is $1,500.00. Furthermore, this amount is consistent with the humanitarian purposes of the Act." F.F. No. 22. Based on the average weekly wage calculation, the WCJ concluded Claimant is entitled to death benefits at a rate of $480 per week.

The WCJ's average weekly wage finding is supported by the bank records and corroborated by Mother's testimony. Both parties presented virtually identical bank records from Chase Bank, Decedent's bank. Certified Record, Ex. Nos. C-11 & D-4; Reproduced Record (R.R.) at 66a-488a. The records show cash deposits, primarily in the amount of $5,000 once or twice a month. See R.R. at 109a, 117a, 127a, 135a, 146a, 167a, 182a, 184a, 196a, 198a, 206a, 214a, 221a, 223a, 231a, 233a, 247a, 249a.

In addition, Mother testified Decedent only worked for Ester, and he did not work for any other employers. N.T., 5/31/12, at 26-27. She further testified Decedent earned commissions on the vehicles he sold. Id. at 42, 44. Although Mother was mistaken as to the method by which Decedent was paid, *i.e.* check versus cash or weekly amounts versus varying amounts, the $1,500 monthly average of the bank deposit records is not inconsistent with Mother's estimate of

23

his commissions. There is no traditional documentation of wages to rebut this evidence. There is also no evidence to suggest the income came from another source. Although UEGF objected to Mother's testimony, Mother's knowledge of Decedent's employment and source of income was not necessarily drawn from Decedent's out-of-court statements, but from personal knowledge she obtained based on her relationship to Decedent, their living arrangement, and the allocation of household expenses and child support.

Based on reasonable inferences drawn from the evidence, the WCJ did not err in determining the cash deposits reflected Decedent's wages and sole source of income from his only employer. Thus, we conclude the WCJ did not err in calculating Decedent's average weekly wage and Claimant's death benefits. As counsel for both parties attested Ester could not be located, a remand would serve no purpose.

### D. Circumstantial Evidence

Finally, UEGF maintains, even if the record evidence could be considered competent, the Board erred by alternatively holding that Claimant met his burden of proof by circumstantial evidence of record. Mother's entire testimony concerning Decedent's purported employment relationship with Ester was based on hearsay to which UEGF objected. This evidence was not corroborated by other competent evidence. UEGF claims there is no competent, circumstantial evidence to support the award of benefits.

A WCJ's fact-finding authority includes the authority to draw reasonable inferences from the evidence. Pa. Uninsured Emp'rs Guar. Fund. v. Workers' Comp. Appeal Bd. (Bonner), 85 A.3d 1109 (Pa. Cmwlth. 2014); Mathies Coal. A party who has the burden of proof may rely on circumstantial evidence and inferences reasonably deducible therefrom. Glass v. Workers' Comp. Appeal Bd. (City of Phila.), 61 A.3d 318 (Pa. Cmwlth. 2013); Mathies Coal. In order to prevail, that evidence "must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith." Glass, 61 A.2d at 324 (quoting Smith v. Bell Tel. Co. of Pa., 153 A.2d 477, 480 (Pa. 1959)); accord Mathies Coal.

As discussed above, UEGF is simply wrong on many of its hearsay and authentication challenges. For the reasons set forth above, the competent evidence supports an inference that Decedent was driving to an auction with clients for Ester when he died. The inferences drawn from the circumstantial evidence were reasonable, and a reasonable mind could accept such evidence as substantial evidence to conclude Decedent was an employee and died in the course of employment. There was no other evidence or reasonable inferences as to outweigh these conclusions. We conclude the Board did not err in determining Claimant met his burden of proof through circumstantial evidence.

## IV. Conclusion

The WCJ's findings are supported by Claimant's non-hearsay evidence, circumstantial evidence, and inferences reasonably deducible therefrom. These findings support the conclusion that Decedent was an employee of Ester, injured in the course of his employment, with an average weekly wage of $1,500. Given the humanitarian and remedial objectives of the Act, we conclude the WCJ did not err by granting Claimant's petitions.

Accordingly, we affirm.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Labor and Industry,   :
Uninsured Employers Guaranty Fund,  :
               Petitioner  :
                             :
           v.             :   No. 2334 C.D. 2014
                             :
Workers' Compensation Appeal Board  :
(Ihor Shyra and Ester Auto Group,   :
LLC),                            :
             Respondents   :

# **O R D E R**

**AND NOW,** this 26th day of August, 2015, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

 

                                  _____

                                  ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Labor and Industry,     :
Uninsured Employers Guaranty     :
Fund,     :
                Petitioner     :
    :
          v.     :   No. 2334 C.D. 2014
    :
Workers' Compensation Appeal     :   Submitted: June 19, 2015
Board (Ihor Shyra and Ester Auto     :
Group, LLC),     :
                Respondents     :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**DISSENTING OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: August 26, 2015**

I respectfully dissent. I do not believe that there is competent evidence to support the Workers' Compensation Judge's (WCJ) finding that an employment relationship existed between Ihor Shyra (Decedent) and Ester Auto Group, LLC (Ester). Accordingly, I would reverse the Workers' Compensation Appeal Board's (Board) Order affirming the WCJ's decision to grant Vladimir Shyra (Claimant), the son of Decedent, fatal claim benefits. I also do not believe that there is competent evidence to support the WCJ's finding regarding Decedent's average weekly wage; therefore, even if there were sufficient evidence of an employment

relationship, I would vacate the Board's Order and remand this matter so that the parties could present additional evidence regarding the origin of the deposits to Decedent's account.

The Majority concludes that there is competent evidence to support the WCJ's finding that an employment relationship existed between Decedent and Ester; however, I respectfully disagree. While hearsay is generally not considered competent evidence, due to the relaxed evidentiary rules for workers' compensation proceedings, this Court has set forth the following standard for the use of hearsay evidence to support findings of fact in such proceedings:

> (1) hearsay evidence, *properly objected to,* is not competent evidence to support a finding of the [WCJ]; (2) hearsay evidence, *admitted without objection,* will be given its natural and probative effect and may support a finding of the [WCJ], *if it is corroborated by any competent evidence in the record,* but a finding of fact based *solely* on hearsay will not stand.

Guthrie v. Workers' Compensation Appeal Board (The Travelers' Club, Inc.), 854 A.2d 653, 659 (Pa. Cmwlth. 2004) (emphasis in original) (quoting Walker v. Unemployment Compensation Board of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976)).

The Majority relies, in part, on a hearsay exception to conclude that there is competent evidence to support the WCJ's finding that an employment relationship existed between Decedent and Ester. Pennsylvania Rule of Evidence 803(3) provides that "[a] statement of the declarant's then-existing state of mind (such as motive, intent or plan) . . ." is not excluded by the rule against hearsay. Pa. R.E.

803(3). The Majority concludes that Decedent's statement to Claimant's mother, Decedent's ex-wife, Natalia Zhilkina (Mother), that he intended to go to an auto auction with a co-worker, Ihar Balysh (Balysh), on the day of his death, satisfies this hearsay exception and that the WCJ did not err in relying on the statement to conclude that Decedent was an *employee* of Ester. While I agree with the Majority that this particular statement satisfies the hearsay exception, I do not believe this statement, in conjunction with the other competent evidence of record, provides sufficient evidence that an employment relationship existed between Decedent and Ester such that the hearsay evidence in the record may be admitted.

Most of the evidence regarding Ester was either hearsay or lacked sufficient foundation to be admissible. Mother testified generally about what she thought Ester's business was, that Decedent had worked exclusively for Ester since 2005, and that Decedent worked with Balysh. (Hr'g Tr. at 27-31, May 31, 2012, R.R. at 515a-19a.) However, all of this information was based on what Decedent allegedly told Mother, (Hr'g Tr. at 61-62, R.R. at 541a-42a), and is, therefore, hearsay. Unlike Decedent's statement of intent on the day of his death, I do not believe these other statements satisfy any hearsay exceptions.

Importantly, Mother lacked sufficient foundation to even testify about Ester's business. Pursuant to Pennsylvania Rule of Evidence 602, "[a] witness may testify to a matter *only if* evidence is introduced sufficient to support a finding that the witness has *personal* knowledge of the matter." Pa. R.E. 602 (emphasis added); see also Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products), 861 A.2d 938, 947 (Pa. 2004) (emphasis added)

RCJ-3

(concluding that under Rule 602, "witnesses *must have first-hand knowledge of the subject on which they are testifying for that testimony to be admissible*"). Here, Mother admitted that she had never met Decedent's alleged co-worker Balysh, she had nothing to do with Ester, had no business records of Ester, and that all of her knowledge of Decedent's business and association with Ester came from what Decedent allegedly told her. (Hr'g Tr. at 29, 61-62, R.R. at 517a, 541a-42a.) Because Mother had no personal knowledge of Ester, her testimony lacked foundation and was, thus, inadmissible.[1] Pa. R.E. 602; Gibson, 861 A.2d at 947.

As stated in Guthrie, hearsay evidence may be admitted in workers' compensation cases where it is corroborated by competent evidence in the record. Guthrie, 854 A.2d 659. The only competent evidence demonstrating any sort of an association between Decedent and Ester was Decedent's statement that he was going to the auction on the day of his death and the evidence that he was driving a car owned by Ester when he was killed. I do not believe that this provides enough evidence of an employment relationship between Ester and Decedent such that Mother's hearsay testimony may be admitted to prove such a relationship. Id. Because the testimony regarding an employment relationship between Decedent and Ester was not competent, there is insufficient evidence in the record to support

---

[1] Mother testified, based on her own personal knowledge, that Decedent said he left for work every Wednesday and Friday, and, once every three or four months, on Thursday, and that Decedent did not drive his own vehicle at those times. (Hr'g Tr. at 33-34, R.R. at 513a-14a.) Thus, as UEGF argued before the WCJ, because Decedent allegedly worked so infrequently and there was no evidence that anyone at Ester exercised control over Decedent or supervised Decedent, even if the hearsay evidence was admissible, it is questionable whether Claimant met his burden of demonstrating that Decedent was an employee, rather than just an independent contractor.

the WCJ's finding of an employment relationship and, accordingly, I would reverse.

In addition, I believe that the WCJ's finding on Decedent's average weekly wage is not supported by substantial evidence. The WCJ's average weekly wage was based on Mother's testimony and Decedent's bank records. Mother testified that Ester paid Decedent *by check* and that the payments made to Decedent were based on his auto sale commissions, for which he received $500-$1,500 per vehicle sold. (Hr'g Tr. at 40-42, 44, R.R. at 520a-22a, 524a.) However, Mother stated that her knowledge of the alleged payments made by Ester to Decedent was based on what Decedent told her. (Hr'g Tr. at 45, R.R. at 525a.) Other than this hearsay evidence, there is no evidence that all of the money, or even any of the money, deposited in Decedent's bank account actually came from Ester. In particular, the record fails to confirm that any checks issued by Ester were deposited into Decedent's bank account. To the contrary, the bank records entered into evidence demonstrate that Decedent *only* deposited *cash* into his bank accounts. Thus, Mother's testimony that Ester paid Decedent with checks has no support in the record. Moreover, although Mother testified that she filed Decedent's tax returns after his death in 2011, (Hr'g Tr. at 62-63, R.R. at 542a-43a), she did not produce the tax returns.

The WCJ based its average weekly wage on Decedent's bank records, which showed that $55,503.00 cash was deposited into Decedent's bank account over a 37 week period, averaging $1,500 per week. (WCJ Decision, Findings of Fact ¶ 22.) However, there is no competent evidence in the record to demonstrate that

the deposited money came from Ester. Because there is no competent evidence to corroborate that Ester paid Decedent, Mother's hearsay testimony regarding Ester's alleged payments to Decedent is inadmissible. <u>Guthrie</u>, 854 A.2d 659. Therefore, even if there were substantial evidence of an employment relationship between Decedent and Ester, I would vacate the Board's Order and remand so that additional evidence could be taken regarding Decedent's average weekly wage.

For the foregoing reasons, I respectfully dissent.

_____
**RENÉE COHN JUBELIRER, Judge**

RCJ-6